[No. 6247. Decided October 19, 1906.]

PHIL T. BECHER, *Appellant*, v. HENRY A. SHAW *et al.*,
*Respondents, and* FRANK BENESH, *Garnishee
Defendant.*[1]

EXEMPTIONS—HOMESTEADS—EXEMPTION OF PROCEEDS OF SALE.
Under Bal. Code, §§ 5219 and 5247, authorizing the voluntary sale of
an exempt homestead free from all claims or liens, and under a lib-
eral construction of the exemption laws, the proceeds of such sale
which the owner intends in good faith to reinvest in another home-
stead are exempt from garnishment.

Appeal from a judgment of the superior court for Spokane
county, Carey, J., entered January 18, 1906, upon findings
in favor of the defendants, dismissing a garnishment proceed-
ing, after a trial upon the defendants' controversion of the
answer of the garnishee. Affirmed.

*A. E. Gallagher* and *W. J. Thayer*, for appellant, con-
tended, among other things: A voluntary sale of a homestead
makes the proceeds of the sale liable to garnishment unless
specifically protected by the statute. *Mann v. Kelsey*, 71
Tex. 609, 12 S. W. 43, 10 Am. St. 800; *Moursund v. Priess*,
84 Tex. 554, 19 S. W. 775; *Womack v. Stokes*, 12 Tex. Civ.
App. 648, 35 S. W. 82; *Huskins v. Hanlon*, 72 Iowa 37,
33 N. W. 352; *Harrier v. Fassett*, 56 Iowa 264, 9 N. W. 217;
*Giddens v. Williamson*, 65 Ala. 439; *Lane v. Richardson*,
104 N. C. 642, 10 S. E. 189; 1 Freeman, Executions (2d ed.),
§ 235; *Freiberg v. Walzen*, 85 Tex. 264, 20 S. W. 60, 34
Am. St. 808; 15 Am. & Eng. Ency. Law (2d ed.), 594; 18
Cyc. 1443; *Wright v. Westheimer*, 3 Idaho 232, 28 Pac.
430; *Bennett v. Hutson*, 33 Ark. 762; *Pool v. Reid*, 15 Ala.
826; *Connell v. Fisk*, 54 Vt. 381; *Salsbury v. Parsons*, 36
Hun 12; *Avery Planter Co. v. Cole*, 61 Ill. App. 494; *Reade
v. Kerr*, 52 Ill. App. 467; *Scott v. Brigham*, 27 Vt. 561.

*Belt & Powell*, for respondents.

[1]Reported in 87 Pac. 71.

RUDKIN, J.—On the 27th day of March, 1903, the plaintiff commenced an action against the defendants Henry A. Shaw and wife for the recovery of the sum of $296.90 with interest at the rate of six per cent per annum from January 24, 1903. At the time of the commencement of such action, a writ of garnishment was sued out and served on the garnishee defendant, Benesh. The garnishee answered that he was conditionally indebted to the defendants in the principal action in the sum of $500, with interest at the rate of eight per cent per annum from June 2, 1902, on account of the balance due on the purchase price of certain real property purchased by the garnishee from the principal defendants, and in the further sum of $24 on account of interest paid by the principal defendants on account of a certain mortgage on said real property, subject, however, to a counterclaim in the sum of $137.50 in favor of the garnishee against the principal defendants. The principal defendants controverted the answer of the garnishee, alleging, among other things, that the money due from the garnishee to the principal defendants was a part of the purchase price of their homestead, and that they intended to invest the same in another homestead. Judgment was given in favor of the plaintiff in the principal action on the 10th day of October, 1904, in the sum of $344.42, and $16.60 costs of suit. At the hearing of the garnishment proceedings, the court found, that the defendants in the principal action had occupied the premises theretofore sold to the garnishee for a period of twenty years prior to the time of sale, and that they at all times claimed the same as their homestead;.

"That on the 2nd day of June, 1902, said Henry A. Shaw and wife sold to the garnishee defendant Frank Benesh said premises for the sum of $1,600; said premises being at that time mortgaged for the sum of $600, which mortgage the said Benesh assumed and agreed to pay as a part of the purchase price; and that the money due from the said Benesh to said Shaw and wife is the proceeds of the sale of said

homestead, and that they at all times intended to purchase another homestead with said proceeds; and that the interest in said lands in said Henry A. Shaw and wife at the time of said sale is of the value of $1,000."

As conclusions of law the court found that the proceeds of the sale of the homestead were exempt from garnishment, and entered judgment accordingly. From this judgment the plaintiff has appealed.

The case comes before us on the findings of the court below, and the sufficiency of these findings to sustain the judgment is the only question for consideration. The appellant contends that a voluntary sale of the homestead is a waiver of the homestead right, and that the exemption does not attach to or follow the proceeds of the sale. In support of this view he cites 15 Am. & Eng. Ency. Law (2d ed.), p. 594, as follows:

"In the absence of some provision in the statute to the contrary, the voluntary sale of his homestead by a debtor will constitute a waiver or abandonment of his right of homestead exemption, and the right will not follow and attach to the proceeds, but creditors may reach and subject them by garnishment or otherwise. In many states, however, the statute expressly or impliedly allows a debtor to sell his homestead for the purpose of investing in another homestead, and protects the proceeds prior to such reinvestment. In some states the proceeds are thus protected for a limited time only."

Exemptions are, no doubt, creatures of the constitution or the statute, and we accept the foregoing as a correct statement of the law. It only remains to consider whether our statute does, expressly or by implication, exempt the purchase price of the homestead from execution or garnishment, where the homestead claimant intended in good faith to reinvest the proceeds in another homestead. The statutory provisions bearing upon this question are the following: Bal. Code, § 5219 (P. C. § 5461), provides how the homestead may be conveyed or encumbered; section 5220 (P. C. § 5462), pro-

vides how the homestead may be abandoned, viz., by declaration of abandonment or a grant thereof, executed and acknowledged; sections 5222 to 5232 (P. C. §§ 5464–5474), provide for a forced sale of the homestead where the value exceeds the statutory exemption; section 5233 (P. C. § 5475), provides that the amount of the homestead exemption must be paid to the claimant; and section 5234 (P. C. § 5476), that the money paid to the claimant is entitled to the same protection against legal process and the voluntary disposition of the husband as is the homestead itself. Section 5274 (P. C. § 840), provides as follows:

"In case of the sale of said homestead, any subsequent homestead acquired by the proceeds thereof shall also be exempt from attachment and execution; nor shall any judgment or other claim against the owner of such homestead be a lien against the same in the hands of a *bona fide* purchaser for a valuable consideration."

We are inclined to agree with the appellant that section 5233, *supra*, has no application to the proceeds of a voluntary sale, but we are nevertheless of opinion that sections 5219 and 5247, which authorize the sale of the homestead free from all claims or liens and the acquisition of a new homestead exempt from attachment or execution, by implication exempt the proceeds of the sale of the homestead from garnishment for a reasonable time where the homestead claimant intends in good faith to reinvest the proceeds in another homestead. We think that a liberal construction of the statute requires us to so hold, and that any other construction would in a measure defeat the beneficent purpose the legislature had in view. Of what avail would it be to the homestead claimant to sell his homestead free from claims and liens if the proceeds are to become immediately subject to execution or garnishment. If the claimant may exchange one homestead for another without forfeiting his exemption rights, why should he not be permitted to accomplish the

same result through the medium of a sale? In *Watkins v. Blatschinski*, 40 Wis. 347, the court said:

"The statute further provides that no judgment or decree against the owner shall be a lien upon the homestead for any purpose whatever, except in certain specified cases, which need not be noticed. The policy of the statute cannot be misapprehended. Its obvious design and plain purpose is, to benefit the debtor by securing to him his homestead beyond all liability to forced sale on execution or other process. In case the debtor desires to remove from the homestead for some temporary cause, or to absent himself for a time, the statute permits him to do so (*Jarvais v. Moe*, 38 Wis. 440) ; and the statute further enables him to sell and convey the homestead to a purchaser, free from all liens by judgment. It is obvious that this legislation is in the interest of the owner of the homestead, and was intended to confer valuable rights. It is not legislation for the benefit of creditors. Now, is it not plain that the right to sell and convey the homestead free from judgment liens is a barren right, so far as the owner is concerned, if the proceeds of the sale cannot be protected until they reach the hands of the vendor, or while in transition from one homestead sold to another purchased? It certainly seems to us to be a valueless right, if the proceeds of the sale are liable to be attached, or are subject to garnishee process, as soon as the homestead is sold. And we hardly think the legislature would have been to the trouble of enacting that the homestead might be sold and conveyed free from all judgment liens, if the right existed in the judgment creditor at once to attach all securities or garnishee all moneys arising from the sale. Consequently we must hold the intent of the law to be, to exempt the proceeds of the homestead, which the debtor *bona fide* intends to use and apply in obtaining another homestead. . . . This undoubtedly is the policy and spirit of the statute, to allow a person to sell one homestead and buy another ; and the exemption must cover the change, and protect the proceeds while the transfer is being made. Otherwise the beneficent object of the law would often be defeated, and the owner would derive no possible benefit from the provision which enables him to sell and convey his homestead free from all judgment liens except those specified."

This decision was prior to the Wisconsin statute exempting the proceeds of the sale of the homestead for the period of two years. See, also, *Cullen v. Harris*, 111 Mich. 20, 69 N. W. 78, 66 Am. St. 380.

The statute of Iowa authorizes a change in the homestead and provides that the new homestead shall be exempt to the extent of the value of the old, but does not in terms exempt the purchase money arising from the sale of the homestead. Nevertheless the supreme court of that state has repeatedly held that, where a party sells his homestead with the intention of purchasing another, he will be allowed a sufficient time within which to exercise that right, and during such period the proceeds of the sale are exempt. In *State v. Geddis*, 44 Iowa 537, the court said:

"Sec. 2000 of the Code provides that, 'The owner may from time to time change the limits of the homestead by changing the metes and bounds, as well as the record of the plat and description, or may change it entirely. . . .' Sec. 2001. 'The new homestead to the extent in value of the old, is exempt from execution in all cases when the old or former homestead would have been exempt, but in no other, nor in any greater degree.' Here is an absolute right given to change one homestead for another, or to sell the homestead and acquire a new one, which shall be exempt to the same extent as the former one. There is no prescribed method as to how this shall be done. The statute does not provide that the sale must be for money in hand, which must be immediately invested in the new homestead; that is, that the selling of the old and purchasing of the new must be simultaneous acts. We must give the statute a reasonable construction so as to effectuate its object. If a homestead be sold and the proceeds applied to some other use there is no doubt that the exemption would cease, but where the sale is made on a credit and with the intention of using the proceeds when collected in purchasing another homestead, and the proceeds are not put to any intervening use, they are exempt while thus *in transitu*, so to speak, from the old homestead to the new. Any other rule would practically prohibit the changing of homesteads."

See, also, *Schuttloffel v. Collins*, 98 Iowa 576, 67 N. W. 397, 60 Am. St. 216; and cases cited. We are not unmindful of the fact that there are numerous decisions to the contrary of the views here expressed, but as said by the court in *Watkins v. Blatschinski, supra,* 'they are mostly from states where the courts place a strict construction on exemption laws, whereas, this court has uniformly declared that such laws must be liberally construed.

Finding no error in the record, the judgment is affirmed.

MOUNT, C. J., FULLERTON, HADLEY, CROW, ROOT, and DUNBAR, JJ., concur.