[No. 33764.   Department Two.   January 11, 1957.]

ARCHIE S. LIEN et al., Respondents, v. MARION G. HOFFMAN et al., Appellants.[1]

Wright & Wright, for appellants.

Marion Garland, Jr., William R. Garland, John A. Bishop, and Garland & Garland, for respondents.

Skeel, McKelvy, Henke, Evenson & Uhlmann, W. E. Evenson, Jr., and William H. Gates, Jr., amici curiae.

[1] Reported in 306 P. (2d) 240.

WEAVER, J.—December 30, 1952, defendants recovered a money judgment against Arthur O. and Irene Halverson. May 27, 1953, the Halversons recorded a statutory declaration of homestead on property owned by them at the time judgment was entered. July 7, 1954, plaintiffs purchased the property from the Halversons, subject to a mortgage; the balance of the thirty-eight hundred dollar purchase price was paid in cash.

Subsequently (the exact date does not appear of record), the Halversons purchased a vacant lot. With the cash received from plaintiffs, they bought a house and moved it on the property. August 17, 1955, the Halversons filed a declaration of homestead on the property acquired with the proceeds of the sale. The parties stipulated:

"That the two declarations of homestead filed by Arthur O. and Irene Halverson on the two pieces of property above referred to were and are valid declarations of homestead, in their circumstances."

There is no question of the Halversons' good faith in this transaction.

Under these facts, did plaintiffs take title to the real property free of the lien of defendants' judgment?

Defendants argue (a) that their judgment became a lien upon the real property owned by the Halversons on December 30, 1952; (b) that the first homestead exemption simply superseded and rendered the judgment unenforceable; and (c) that Halversons' sale of the property to plaintiffs reinstated the judgment lien so that it might be enforced under the general execution statutes.

Defendants (appellants) appeal from a judgment which (a) restrains the sheriff from selling, by virtue of defendants' money judgment, the real property conveyed by Halversons to plaintiffs, and (b) quiets title to the property in plaintiffs.

The narrow question presented appears to be one of first impression in this state under the existing statute. Prior to 1945, the statute provided that

". . . no judgment, or other claim against the owner of a homestead, except by mortgage, shall be a lien against such homestead *in the hands of a bona fide purchaser for a valuable consideration.*" (Italics ours.) Laws of 1927, chapter 193, § 2, p. 265; Rem. Rev. Stat., § 532. (For similar language in prior statutes, see Code of 1881, § 346; 2 Hill's Code, § 485; Bal. Code, § 5247; Rem. Comp. Stat. § 562.)

The 1945 legislature amended Laws of 1927, chapter 193, § 2 (Laws of 1945, chapter 196, § 2, p. 568; Rem. Supp. 1945, § 532), and the language, quoted *supra,* was omitted from the present statute. See RCW 6.12.090.

As a result of a change, made in 1895, in the method of selecting a statutory homestead exemption (more fully discussed in *Locke v. Collins,* 42 Wn. (2d) 532, 534, 535, 256 P. (2d) 832 (1953)), we now have two possible factual situations: the first, when the homestead is filed *prior* to entry of judgment; the second, when the homestead is filed *subsequent* to judgment but before execution sale.

■ *First*: When the homestead exemption is established *prior* to judgment, this court has held that the judgment does not become a lien upon the property (*Barouh v. Israel,* 46 Wn. (2d) 327, 332, 281 P. (2d) 238 (1955); *Traders' Nat. Bank v. Schorr,* 20 Wash. 1, 54 Pac. 543, 72 Am. St. Rep. 17 (1898)), except in certain specified situations fixed by statute, which need not be noticed at this time. See RCW 6.12.100.

■ *Second*: When a judgment is rendered *prior* to the filing of a declaration of homestead, the judgment immediately becomes a lien upon the real property of the judgment debtor by virtue of Laws of 1929, chapter 60, § 1, p. 56 (*cf.* RCW 4.56.190), which provides:

"The real estate of any judgment debtor, and such as he may acquire, not exempt by law, shall be held and bound to satisfy . . . any judgment of the supreme or superior court of this state, . . . and every such judgment shall be a lien thereupon to commence as hereinafter provided and to run for a period of not to exceed six years from the day on which such judgment was rendered: . . ."

In addition, Laws of 1929, chapter 60, § 2, p. 56 (*cf.* RCW 4.56.200), provides:

"The lien of judgments upon the real estate of the judgment debtor shall commence as follows:

"(a) Judgments . . . of the superior court for the county in which the real estate of the judgment debtor is situated, from the time of the entry thereof; . . ."

█ Although these statutes recognize the lien of the judgment upon the property of the judgment debtor, this court has enjoined the sale thereof, *held under the general execution statutes*, when a declaration of homestead has been "selected *at any time before sale*, as in this chapter provided," (RCW 6.12.010) even though the homestead exemption is claimed *subsequent* to entry of judgment. *Snelling v. Butler*, 66 Wash. 165, 119 Pac. 3 (1911); *Kenyon v. Erskine*, 69 Wash. 110, 124 Pac. 392 (1912); *Security Nat. Bank v. Mason*, 117 Wash. 95, 200 Pac. 1097 (1921); see *Locke v. Collins*, 42 Wn. (2d) 532, 538, 256 P. (2d) 832 (1953).

The answer to the problem posed by the instant case will not be found by placing emphasis upon the order in which events transpire. The answer does not depend upon whether the judgment precedes the declaration of homestead, or *vice versa*.

Some of the consequences, which spring from appellants' (defendants') contentions, were graphically set forth, many years ago, in Thompson, Homesteads and Exemptions 342 (1886). The author said:

"On the other hand, from the rule that the lien of a judgment attaches to the homestead during its occupancy as such, remaining dormant, however, while such occupancy continues, but springing into life when it ceases, flows the consequence that the debtor cannot, while judgments stand against him unsatisfied, mortgage or sell his homestead, except subject to the liens of such judgments; that, if he removes from such homestead with the view of acquiring another, the judgment lien instantly becomes active, and the premises may be sold. An insolvent debtor is thus reduced to a mere usufructuary interest in his homestead, the enjoyment of which depends upon uninterrupted

occupancy. He can neither remove from it nor incumber it, nor sell it, *even for the purpose of acquiring another homestead more suitable to his condition or wants.* If it is an urban homestead, it may become, in course of time, surrounded with unwholesome and offensive manufacturing establishments, and, at the same time, if he could sell it, it might command a ready price for such purposes. But he cannot escape from it with his family without surrendering it to his creditors. Such a homestead may, indeed, be the asylum of an unfortunate debtor, but, under the operation of such a rule, it may also become his prison and his grave." (Italics ours.)

A portion of Mr. Thompson's criticism, that the owner of a homestead

". . . can neither remove from it, nor incumber it, nor sell it, even for the purpose of acquiring another homestead more suitable to his condition or wants,"

was a matter of early legislative action in this state. Laws of 1869, chapter 31, § 342, p. 87 (Code of 1881, § 346), provided:

"In case of the sale of said homestead, any subsequent homestead acquired by the proceeds thereof, shall also be exempt from attachment and execution, nor shall any judgment or other claim against the owner of such homestead be a lien against the same in the hands of a bona fide purchaser for a valuable consideration."

We note that this early statute (a) recognizes the right to sell a homestead; (b) provides that any subsequent homestead acquired by the proceeds of the sale shall also be exempt from attachment or execution; and (c) provides that a bona fide purchaser for value takes it free of any claim by a judgment creditor. However, the statute does *not* specifically exempt the proceeds of the sale of the homestead.

In *Becher v. Shaw*, 44 Wash. 166, 87 Pac. 71, 120 Am. St. Rep. 982 (1906), the facts were these:

Plaintiff commenced an action against defendant for the recovery of a money judgment and had a writ of garnishment served. The garnishee defendant answered that he was conditionally indebted to the defendant in the principal

action. The principal defendant controverted the answer of the garnishee, alleging, among other things, that the money due the principal defendant from the garnishee was a part of the purchase price of his homestead; and, that he *intended* to invest the money in another homestead.

The trial court found that the money due from the garnishee defendant was the proceeds of the sale of defendant's homestead, and that he "at all times intended to purchase another homestead with said proceeds." Plaintiff contended that the voluntary sale was a waiver of the homestead right, and that the exemption did not attach to nor follow "the proceeds of the sale."

The proceeds of the sale were held to be exempt. This court said:

"We are nevertheless of opinion that sections 5219 [Bal. Code, § 5219 providing how the homestead may be conveyed or encumbered] and 5247 [Bal. Code, § 5247 quoted *supra* as Code of 1881, § 346], which authorize the sale of the homestead free from all claims or liens and the acquisition of a new homestead exempt from attachment or execution, by implication exempt the proceeds of the sale of the homestead from garnishment for a reasonable time where the homestead claimant intends in good faith to reinvest the proceeds in another homestead. We think that a liberal construction of the statute requires us to so hold, and that any other construction would in a measure defeat the beneficent purpose the legislature had in view. Of what avail would it be to the homestead claimant to sell his homestead free from claims and liens if the proceeds are to become immediately subject to execution or garnishment. If the claimant may exchange one homestead for another without forfeiting his exemption rights, why should he not be permitted to accomplish the same result through the medium of a sale?" (p. 169)

We turn now to the present statute which controls the disposition of this case.

RCW 6.12.090 provides:

"The homestead is exempt from attachment and from execution or forced sale, except as in this chapter provided; and the proceeds of the voluntary sale of the homestead in good faith for the purpose of acquiring a new home-

stead, shall likewise be exempt for one year, and also the new homestead acquired with such proceeds. Every homestead claimed in the manner provided by law, shall be presumed to be valid to the extent of all the lands claimed exempt, until the validity thereof is contested in a court of general jurisdiction in the county or district in which the homestead is situated."

We note that this statute (a) recognizes the right to sell a homestead and (b) provides that any subsequent homestead acquired by the proceeds of the sale shall be exempt. To this point, the statute is the same as the one under which the *Becher* case, *supra,* was decided. In addition, the present statute specifically exempts, for a period of one year, "the *proceeds* of the voluntary sale of the homestead in good faith for the purpose of acquiring a new homestead." Thus, the holding of the *Becher* case is now statutory. As distinguished from the early statute, however, this statute is silent in one respect: it does not specifically provide that a former homestead, in the hands of a bona fide purchaser for a valuable consideration, is free of a judgment against the former owner of the homestead.

The analogy between the two statutes we have discussed is so close that we believe the instant case is controlled by the *rationale* of *Becher v. Shaw, supra.*

■ (1) The right to sell a homestead; (2) the exemption of the proceeds of a voluntary sale in good faith for the purpose of acquiring a new homestead; (3) the exemption of the new homestead acquired with such proceeds; and (4) the right, in these circumstances, to convey the homestead to a bona fide purchaser for a valuable consideration free of a judgment against the former owner of the homestead, are all so interwoven and dependent, one upon the other, that the first three rights are hollow and, for practical purposes, meaningless, unless the fourth exists. It is plain that the right to sell and substitute another homestead is a barren right, so far as the owner is concerned, if the first homestead cannot be conveyed to a bona fide purchaser for a valuable consideration, free of a judgment lien

against the homesteader, in order to acquire the second—as Mr. Halverson did. As the trial court so aptly remarked:

"If the lien was enforceable [by defendant] against that property after sale [by Halverson], then he [Halverson] could find no purchaser in the world to buy the same and the language in the sections which I have quoted would be completely and entirely meaningless. How could there be any proceeds which would be exempt to the homesteader if he had no right to sell the property?"

Judge Rudkin said in the *Becher* case:

"We think that a liberal construction of the statute requires us to so hold, and that any other construction would in a measure defeat the beneficent purpose the legislature had in view." (p. 169)

■ Homestead and exemption statutes are favored in the law and should be liberally construed. "They do not protect the rights of creditors. In fact, they are in derogation of such rights." *First Nat. Bank v. Tiffany,* 40 Wn. (2d) 193, 202, 242 P. (2d) 169 (1952). However, we fail to see how defendants, as judgment creditors, will lose any rights by an affirmance of the judgment. To hold otherwise, would not only nullify the statutes recognizing Mr. Halverson's right to convey his property under the circumstances, but it would permit the judgment creditor to do indirectly that which the homestead statutes prevent him from doing directly; namely, hold the property "liable for the debts of the owner." RCW 6.12.080.

Our conclusion does not grant a double homestead exemption, as defendants claim; it simply protects the right of the judgment debtor to substitute one homestead for another in accordance with the terms of the statute.

Finally, if the language of *Locke v. Collins,* 42 Wn. (2d) 532, 256 P. (2d) 832 (1953), is read in context and confined to the facts and questions then before the court, we do not find it inconsistent with the conclusion we have reached in the instant case.

The judgment is affirmed.

DONWORTH, C. J., MALLERY, HILL, and OTT, JJ., concur.