**In the Matter of Maynard Chris ESPE-LUND, whose wife's name is Maxine Fay Espelund, Bankrupt.**

**Bankruptcy No. 44906.**

United States District Court
W. D. Washington, N. D.
June 30, 1959.

Alex Wiley, Seattle, Wash., for Pacific Finance Company.

Kenneth S. Treadwell, Jerome Shulkin, Miracle, Treadwell & Pruzan, Seattle, Wash., for trustee.

LINDBERG, Chief Judge.

This matter is before the court on petition of Pacific Finance Company, a corporation, a creditor of the bankrupt, for review of an order of the referee preserving to the trustee under § 70, sub. e (2) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e(2) a mortgage lien on certain personal property claimed exempt by the bankrupt. The subject lien was created contractually on April 28, 1958 by the bankrupt giving to the petitioner a chattel mortgage on certain household furniture to secure the repayment of a loan then given in the amount of $500. The chattel mortgage was not filed as required by the laws of the State of Washington, RCW 61.04.020.

On October 9, 1958 the bankrupt filed his voluntary petition in bankruptcy, scheduling his debt to petitioner as a secured obligation. By an amendment to Schedule B–5 filed November 28, 1958 bankrupt listed as property claimed exempt from the operation of the Act all of the household goods covered by the above-mentioned mortgage, giving as its value the amount of $500.

On December 2, 1958 the referee in bankruptcy entered an order decreeing that the lien of petitioner was void as to the trustee but preserved for the benefit of bankrupt's estate, and that the trustee succeeded to and could enforce the chattel mortgage.

Also on December 2, 1958 the referee entered an order confirming in all respects the trustee's report on exempt property. Because some confusion existed as to just what was declared exempt by said report and order, an order of clarification was entered January 15, 1959, holding that all of the property claimed exempt was of a value of less than $500, but was still subject to said

mortgage to which the trustee has been subrogated.[1]

■ Since it is admitted by all parties that the chattel mortgage here involved was not duly filed the mortgage, then, was properly subject to being declared void as to the trustee under § 70, sub. e(1) of the Act. The referee, in ordering the lien of said mortgage preserved for the benefit of the estate and subrogating the trustee to the rights of the mortgagee held that such order was specifically authorized by Congress in 1952 when it amended § 70, sub. e(2) of the Act. Thus, the only question to be decided on this review is whether said amendment authorizes such an order with respect to exempt property.

Section 70 of the Act deals principally with the bankruptcy trustee's title. It has been recognized that without an enactment of this sort the successful conduct of a debtor's liquidation would be impossible. As stated in Collier on Bankruptcy, "In order to remove the bankrupt's remaining property from his hands and to facilitate the proper disposal of the same in the interests of his creditors, it is essential that the liquidation officer—the bankruptcy trustee—be given full title to such property with all the rights appertaining thereto, and that any property not to be dealt with in the proceeding be carefully excluded." [2] Subdivision a of § 70, with great detail, provides for the vesting of title to all the bankrupt's non-exempt property in the trustee, and, significantly, emphasizes the exclusion of the bankrupt's exempt property. Section 47, sub. a(6) of the Act, 11 U.S.C.A. § 75, sub. a(6) sets forth the rights and duties of the trustee in bankruptcy with respect to exemptions of the

bankrupt. He must estimate and determine the value of the exemptions claimed. He must make an itemized report and thereafter set the exemptions off to the bankrupt. As further stated in Collier on Bankruptcy, "Since under the terms of § 70a of the Act the trustee has no title to exempt property, he may not retain such property and deprive the bankrupt of his exemption on the ground that certain creditors claim superior rights to it." [3]

Section 70, sub. e(1) of the Act declares that a transfer made or suffered by a *debtor adjudged* a bankrupt under the Act, which, under any federal or state law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under the Act, *shall be null and void as against the trustee of such debtor.* Subsection e(2), in its entirety, reads:

"All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate: *Provided, however,* That the court may on due notice order such transfer or obligation to be preserved for the benefit of the estate and in such event the trustee shall succeed to and may enforce the rights of such transferee or obligee. The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or obligation against whoever may hold or have received it, except a person as to whom the

---

1. "It is ordered that all of the household furniture, including the Television set, is of the value of less than $500.00, and is set over to the bankrupt as exempt, but that all of said furniture described in the mortgage executed by the bankrupt on or about April 28, 1958, in the sum of $500.00, to the Pacific Finance Company, is subject to said mortgage, which is valid between the parties and to which the Trustee has been subrogated

by an Order of Court heretofore entered."

2. Collier on Bankruptcy, 14th Edition, Vol. 4, paragraph 70.01, page 925.

3. Ibid., Vol. 1, paragraph 6.06, page 813. See also In re Vonhee, D.C., 238 F. 422, and authority cited therein. Lockwood v. Exchange Bank, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061.

transfer or obligation specified in paragraph (1) of this subdivision is valid under applicable Federal or State laws."

The proviso sentence was added by the 1952 amendment. As indicated, the referee construed this amendment as authorizing the order entered. The trustee seeks to sustain this interpretation. It is the petitioner's contention, on the other hand, that as the property involved was reported exempt by the trustee and confirmed by the referee the only power the bankruptcy court has over said property is the power to set it aside to the bankrupt; that it does not have authority to determine the validity of liens or claims which third persons may have to or upon exempt property.

■ Clearly, the Act before the amendment did not authorize the type of order here entered nor is such claimed. Although the subdivision states that "All property of the debtor" affected by such a transfer shall be discharged from the obligation the sentence wherein those words are contained must be read in whole. When so read it states that all property so affected shall pass to the trustee for the benefit of the estate. But exempt property does not pass to the trustee *for the benefit of the estate*. In the absence of the amendment the trustee or indeed any creditor of the bankrupt could assert that the chattel mortgage, being unfiled, would be void as to him, but it would be an idle act for the debtor could assert his right of exemption as against all creditors except the mortga-

gee, and has done so here. The debtor could not prevail against the mortgagee for it is well settled in Washington that an unfiled chattel mortgage is good between the parties. Watson v. First National Bank, 82 Wash. 65, 143 P. 451.

Although § 70, sub. e is silent about exempt property before the 1952 amendment it was wholly ineffective with respect to exempt property for the reasons just indicated. The question, then, is whether Congress intended by virtue of the 1952 amendment to make said subdivision effective with respect to exempt property.

■ No case has been cited, nor has the court been able to find one, construing the meaning of the 1952 amendment to said subdivision as here applied. Legislative history of the amendment seems limited to the remarks contained in House Report No. 2320, 82nd Congress, 2nd Session (1952) at page 16.[4] Nothing in said report indicates an intent on the part of Congress to give meaning to § 70, sub. e by virtue of the amendment which would expand the rights of creditors through the trustee to the exempt property of the bankrupt. The clear meaning of the intent of Congress gleaned from said report is that provision is made whereby the trustee may be subrogated to the rights of the transferee or obligee, whenever the need arises, so that the benefits intended for the estate by striking down a lien or transfer do not thereby pass on to a junior incumbrancer or junior interest not entitled thereto. In other words, when a voidable mort-

4. "Where under the act a transfer by way of lien, security title or otherwise, or an obligation, is void or voidable against a trustee in bankruptcy, it may under certain circumstances be necessary to preserve the same for the benefit of the estate by subrogating the trustee to the rights of the transferee or obligee, so that the benefits intended for the estate would not be passed on to junior interests not entitled thereto.

"Under section 60b, the lien or security title, voidable as a preference, may be preserved for the benefit of the estate and passed to the trustee, and, under section 67a(3), a lien obtained by judicial proceedings, which is voidable, may likewise be preserved for the benefit of the estate and, to evidence title thereto, a conveyance thereof to the trustee may be directed. A like situation may arise under section 70e with respect to a transfer or obligation which is void or voidable against the trustee, but the subdivision contains no provision of preservation for the benefit of the estate similar to that contained in section 60b or section 67a(3). The bill provides language which supplies the omission and which is adapted to the situation." Vol. 2, U.S.Code Congressional and Administrative News, 1952, page 1976.

gage is declared void as to the trustee it hardly benefits the estate if there exists a junior mortgagee or other interest junior to the mortgage or transfer declared void, who, by the very act of the trustee in declaring the first transfer or obligation void, is elevated to the rank of first mortgagee or incumbrancer. The junior interest is not entitled to this windfall because he took his security subject to the then existing voidable security (if he did not, he would not be junior). But elevated in rank he is in the absence of the proviso added by the 1952 amendment. This, as evidenced by the House Report, is what Congress sought to prevent.

Prior to the enactment of this amendment Jacob I. Weinstein, the then Chairman of the National Bankruptcy Conference, commenting on the proposed amendments, in the Journal of the National Association of Referees in Bankruptcy, indicated that this type of situation was the need for said amendment and would be corrected thereby.[5] After the enactment of the amendment Samuel C. Duberstein, Referee in Bankruptcy for the Eastern District of New York, in the same journal commented on this amendment and cited two cases—White v. Steinman, 2 Cir., 120 F.2d 799, and In re Andrews, 7 Cir., 172 F.2d 996, both decided before the amendment—where the amendment would have been particularly applicable.[6] Both of those cases involved the situation where the striking down of one lien or obligation had the effect of elevating a junior interest in the property to a higher rank.

This, it seems, is the sort of situation discussed in the House Report, supra. But that is not the situation presented here. In the case at bar there is no "junior interest" which would obtain an tee striking down the petitioner's mortunearned windfall by virtue of the trus-

gage lien. Here, in the absence of the 1952 amendment, we would merely have an order declaring the chattel mortgage void as to the trustee. This would merely be a declaration of a status existing by virtue of Washington law. But this status could not benefit the bankrupt's estate because the property is exempt from the operation of the Act and the title thereof does not vest in the trustee. If it could not benefit the estate there can exist no need for preservation so as to prevent the "benefit" from passing on to some junior interest not entitled thereto. Thus if the intention of Congress as expressed in the House Report, supra, is all that is looked to, the case at bar is not the situation contemplated by Congress.

But this does not entirely solve the problem this case presents for if the plain and ordinary meaning of the words of the Act, as amended, require the result reached by the referee and that result is not clearly at odds with the expressed intention of Congress, the order of the referee will have to be sustained. We then reach the question, what jurisdiction does the bankruptcy court have over exempt property? And the further question, does the action here taken by the referee exceed that jurisdiction?

Ever since Lockwood v. Exchange Bank, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061, there has been no question but that exempt property constitutes no part of the assets of the bankrupt's estate. Exempt property may pass through the trustee for the purposes named in the Act; that is, the duty to segregate, identify and appraise what is claimed to be exempt, but it is not to be administered for the benefit of creditors.[7]

The trustee cites Chicago, B. & Q. R. Co. v. Hall, 229 U.S. 511, 33 S.Ct. 885, 57 L.Ed. 1306, for the principle that the bankruptcy court may invalidate a lien

5. Journal of the National Association of Referees in Bankruptcy, Vol. 24, No. 1, January, 1950, page 33.

6. Journal of the National Association of Referees in Bankruptcy, Vol. 27, No. 1, January, 1953, page 21.

7. See Chicago, B. & Q. R. Co. v. Hall, 229 U.S. 511, 33 S.Ct. 885, 57 L.Ed. 1306; Baumbaugh v. Los Angeles Morris Plan Co., 9 Cir., 30 F.2d 816, and Annotation 161 A.L.R. 1009.

on exempt property. But the Hall case is distinguishable from the case at bar for in that case the lien was created through judicial proceedings, not contractual, and within four months of the date of bankruptcy. In the Hall case a lien was avoided for the benefit of the bankrupt, not the creditors represented by the trustee. As the court stated in that case, 229 U.S. at page 515, 33 S.Ct. at page 886:

> "It is true that title to exempt property does not vest in the trustee, and cannot be administered by him for the benefit of the creditors."

And the court goes on to say 229 U.S. at page 516, 33 S.Ct. at page 887:

> "The liens rendered void by § 67f are those obtained by legal proceedings within four months. The section does not, however, defeat rights in the exempt property acquired by contract or by waiver of the exemption. These may be enforced or foreclosed by judgments obtained even after the petition in bankruptcy was filed, under the principles declared in Lockwood v. Exchange Bank, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061."

Hall did not waive his exemptions in favor of the lien holder. The case indicates, however, that a different result would have obtained in the event that he had. In the case at bar, on the other hand, the bankrupt has waived his exemption in favor of the petitioner with respect to the property involved and has done so contractually.

The referee in his certificate on review in support of his order asserts that in Washington it is against public policy for a creditor to exact from a debtor a promise not to claim his exemption against that particular debt, citing Slyfield v. Willard, 43 Wash. 179, 86 P. 392. What the Slyfield case does hold is that it would be unconstitutional to allow a husband and wife to make a binding executory contract to waive all their exemptions. The case also holds that a statute permitting a husband and wife

to mortgage a homestead is constitutional. The case of Cammarano v. Longmire, 99 Wash. 360, at page 361, 169 P. 806, at page 807 explains the Slyfield holding in the following language:

> "* * * but its (Slyfield decision) reading in the light of the record will show that the mortgagor purported by the terms of the mortgage to waive his exemptions as against the mortgage debt on property not included within the mortgage. The statute apparently authorizing such a waiver was held unconstitutional, but it was not held that the mortgage was void as to exempt property included within the description of the property mortgaged."

In the case at bar there is no contention made that the bankrupt has waived all his exemptions in favor of the petitioner. If there is an exemption waiver at all it is to particular property and the question of whether such a waiver is valid is a question for the courts of Washington. Exemptions may be waived in Washington under RCW 6.16.080 and the case of Watson v. First National Bank, supra, holds that an unfiled chattel mortgage is valid between the parties. Indeed, there is no contention here to the contrary for if it is not valid between the parties it does not behoove the trustee to be subrogated to the rights of the mortgagee.

The referee then cites Novak v. O'Neal, 5 Cir., 201 F.2d 227 as authority for the principle that a creditor cannot compel the bankruptcy court to set over to the bankrupt his exemptions. The creditor there held an assignment of the bankrupt's exemptions, which appears to be possible in Georgia, and since the bankrupt failed to claim his exemptions the creditor attempted to do so under his assignment. That is not the case here where the creditor neither holds an assignment nor attempts to claim the exemptions for the bankrupt. The bankrupt has already claimed the specific property exempt and, moreover, the trus-

tee has set over the specific property to the bankrupt as exempt.

Hemsell v. Rabb, 5 Cir., 29 F.2d 914, 915, relied upon by trustee, is another case, like the Hall case, supra, involving a lien obtained by judicial proceedings. The case is further distinguishable in the following respect—there the court found that under Texas laws the preexisting lien was valid against the homestead. The court then held, "It follows that the bankrupt did not secure a complete homestead in the 200 acres of land selected by him." If it followed there that the bankrupt failed to secure a complete homestead it necessarily followed because of Texas law and not the Bankruptcy Act. The case of Sampsell v. Straub, 9 Cir., 194 F.2d 228 is likewise distinguishable from the case at bar.[8]

The Bankruptcy Act follows state law with respect to exemptions, see § 6, 11 U.S.C.A. § 24. A claim that the bankrupt in the case at bar failed to secure a complete exemption in the goods involved must be based upon the law of Washington. No such contention is made here. As Judge Learned Hand stated in writing for the court in Negin v. Salomon, 2 Cir., 151 F.2d 112, 113, 161 A.L.R. 1005:

"If the question is to be treated as one of intent, it is certainly not true that an ineffective transfer is a surrender of the transferror's exemption. It does indeed show an intent to surrender the exemption in favor of that particular creditor, but of no one else. For example, in the case at bar, the bank forced the bankrupt to surrender his exemption pro tanto, but it would be altogether untrue to impute to him any purpose to surrender it in favor of his creditors generally. If that was the result, in fact, it was not because he

meant to do so; but because the law imposed it as a consequence, willy nilly. The question is one of state law which determines the scope of the exemption and which the Bankruptcy Act recognizes.

" * * * The law does not concern itself with the debtor's purposes; it gives him the exemption to use or to abuse, as he wills, subject only to its not being used to prevent that distribution which the Bankruptcy Act demands."

There is nothing at all in the record to indicate that the bankrupt here has used his exemption so as to prevent that distribution which the Act demands. There is no claim that this mortgage was given so as to frustrate the purposes of the Act.

■ In Washington an unfiled chattel mortgage may not be in so many words a contractual promise not to claim an exemption with respect to certain property as against a certain debt but its effect is the same. Remington on Bankruptcy, Vol. 3, section 1315 states:

"A court of Bankruptcy should not pass upon the validity of encumbrances on exempt property unless it becomes necessary to proper administration of the estate. * * * Even if a discharge is granted, it cannot in any way impair a lien arising out of contract on exempt property or liens acquired thereon by legal proceedings more than 4 months before bankruptcy.".

And later in the same section:

"A mortgagee of, or the holder of a lien on, exempt property can rely on his security, *if his lien is valid as against such property*, * * *." (Emphasis supplied)

8. In the case of Sampsell v. Straub, supra, the particular lien involved was given under California law the same effect as a judgment lien, and the court found that in California where a judgment lien attaches before a homestead is claimed the bankrupt thereafter is not entitled to his homestead exemption. Thus, whether or not the property was exempt depended upon California law. See also England v. Sanderson, 9 Cir., 236 F.2d 641, 61 A.L.R.2d 744, wherein it is succinctly stated that where the bankruptcy court follows state law in making a determination of what is or is not exempt property no invasion of exempt property is involved.

The important consideration, from the standpoint of the creditor, in regard to exempt property is whether his lien is good as against that property, and that is a question which must be decided in a separate action in the state courts. It is immaterial, on the other hand, whether or not his lien is good as against the trustee. The trustee cannot be concerned because he represents the general creditors as to whom the property is exempt.

To sustain the order of the referee would be to permit the general creditors to do indirectly what the exemption statutes prevent him from doing directly; namely, hold the property liable for the debts of the owner. Lien v. Hoffman, 49 Wash.2d 642, 306 P.2d 240.

Finally, the referee, in support of the order under review, relied upon the case of Sears, Roebuck & Co. v. McAllister, 9 Cir., 184 F.2d 487, for the proposition that a mortgagee under a chattel mortgage which is declared void by the trustee for want of proper filing is in no position to complain. It is true that in that case the conditional vendor, who is perhaps analogous to a chattel mortgagee, was in no position to complain but that was because of the posture of the record before the court. As the court stated at page 488:

> "We think that upon the record before us appellant is not in a position to complain. The record fails to show that this specific property, or any of it, was in fact exempt."

Trustee there failed to view any of the property claimed or to determine whether the $500 in exempt property allowed by Washington law could possibly include the articles purchased on contract from Sears. The court went on:

> "For aught that we can tell the trustee should have had not merely the seller's interest, but the articles themselves, in their entirety."

9. In re Keith N. Vallier, et ux., Bankrupt, case No. 37894, Western District of

Judge Black, who heard the matter in the district court, felt constrained to believe that all of the property claimed by the bankrupt, ignoring "equities", exceeded $500. He then stated:

> "I am saying that when the goods were worth more than $500.00, that they were not exempt,—none of them exempt—except as selected and none in advance for certain, * * *." 9

There the bankrupt claimed only his "equity" in those goods. Here the bankrupt has claimed the property in its entirety and all of the property claimed is found by the trustee to be of a value less than $500.

If, in the case at bar, the property had not been exempt title would have passed to the trustee. There would have been no occasion for preservation of the transfer or obligation. If, in addition, however, there had been a junior incumbrancer whose lien was not voidable as to the trustee there would be occasion for preservation. Providing for such preservation is all that the 1952 amendment to § 70, sub. e(2) appears to do. To hold that this amendment has the sudden and drastic effect of bringing exempt property into the operation of the Act does too much violence to the balance of § 70, which must be read as a whole, as well as § 6 of the Bankruptcy Act.

It is therefore my opinion that the order of the referee under date of December 2, 1958 so far as it voids the lien of petitioner, Pacific Finance Company, obtained by a chattel mortgage dated April 28, 1958 upon household goods belonging to the bankrupt as to the trustee and preserves it for the benefit of the estate is invalid and must be reversed.

An order in accordance herewith may be presented upon notice not later than thirty days from the date hereof.

Washington, Northern Division, hearing on referee's certificate on review.