[No. 37143-6-I.   Division One.   June 2, 1997.]

ROBIN L. MILLER CONSTRUCTION CO., INC., *Appellant*, v. DAVID COLTRAN, ET AL., *Defendants*, KEVIN HYPPA, ET AL., *Respondents*.

*Bernard G. Lanz* and *Lanz & Danielson*, for appellant.
*Kristine A. Chrey* and *Michael T. Schein*, for respondents.

Cox, J. — Robin Miller Construction Co. (RMC) appeals an order appointing an appraiser and an order quashing a writ of execution based on a lack of net value above the total of the homestead exemption, liens, and encumbrances. Because the trial court properly determined that the valuation process is intended to determine the homestead claimant's net value in the property and there was no such value here, we affirm.

In 1989, RMC obtained a default judgment against the Coltrans. Three years later, RMC recorded its judgment.

In August 1992, HFC made a loan to the Coltrans. This loan was evidenced by a promissory note and secured by a deed of trust, which HFC recorded.

The Coltrans defaulted on their loan, and HFC foreclosed its deed of trust in January 1994. HFC acquired the Coltrans' residence at the trustee's sale.

In March of that year, HFC sold the property to the Hyppas. The Hyppas made a down payment, and HFC financed the balance of the price by a note that was secured by a deed of trust.

In March 1995, RMC sought to execute against the property now owned by the Hyppas on the basis of its judgment lien. RMC obtained a writ of execution, and the sheriff served a notice of sale on the Hyppas.

RMC petitioned to have an appraiser appointed pursuant to RCW 6.13.090 and 6.13.100. RMC took the position below that the appraiser should determine the net value of the property as defined by RCW 6.13.010(3) as of the date RMC recorded its judgment against the property in 1992. The Hyppas intervened and argued that the net value should be determined during their ownership of the property, not before. The appraiser estimated the market value of the property as of July 1995 was $145,000. He further determined that there was no net value over the sum of the homestead exemption ($30,000), liens ($18,904 judgment of RMC), and encumbrances ($111,650 HFC deed of trust) as of that date.

The Hyppas moved for an order quashing the writ of execution and sale because no net value existed. The trial court granted the Hyppas' motion. RMC appeals both this order and the trial court's previous order appointing an appraiser.

## Net Value

■ RMC claims that the trial court erred because it should have determined that there was net value in the property as of July 1992, the date RMC recorded its judgment against the Coltrans. The application of the homestead statutes to these facts is a question of statutory interpretation that we review de novo.[1]

RMC conceded at oral argument that the Hyppas have a valid homestead. It further conceded that there was nothing preventing it from executing against this property prior to the Hyppas' acquiring title from HFC in 1994.

■ The homestead statutes were enacted in the interest of humanity and are therefore favored and construed liberally.[2] The homestead exemption was enacted to ensure a shelter for each family.[3] The statutes were enacted to protect debtors, not creditors.[4]

A homestead is real or personal property that the owner uses as a residence.[5] Homestead property is automatically protected by a $30,000 exemption from execution.[6] "Net value" is defined for purposes of the homestead statutes as "market value less all liens and encumbrances."[7]

In order to execute against homestead property, a judg-

---

[1]*Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 443, 842 P.2d 956 (1993).

[2]*Macumber v. Shafer*, 96 Wn.2d 568, 570, 637 P.2d 645 (1981).

[3]*Macumber*, 96 Wn.2d at 570.

[4]*Macumber*, 96 Wn.2d at 570.

[5]RCW 6.13.010.

[6]RCW 6.13.030; RCW 6.13.040; RCW 6.13.070.

[7]RCW 6.13.010(3).

ment creditor must petition the superior court in the county where the homestead property is located for the appointment of an appraiser.[8] The application must show, among other things, that the net value of the homestead exceeds the amount of the homestead exemption.[9] If the net value of the homestead exceeds the homestead exemption, the court may order the property divided or sold to satisfy the judgment.[10]

Here, the trial court determined that there was no net value on which RMC could execute. The total of the $30,000 homestead plus encumbrances of over $130,000 on the property exceeded the $145,000 market value of the property in 1995.

RMC argues that the trial court's use of 1995 data to determine net value as of the time of Hyppas' ownership negated RMC's prior recorded judgment lien against the property and that this is contrary to law. The point of the homestead statute's valuation process is to determine the homestead claimant's interest in the property.[11] Thus, the value, if any, of the Coltrans' former interest in the property is not relevant here.

RMC cites no authority controlling the question before us. The cases it does cite are distinguishable.

In *Wilson Sporting Goods Co. v. Pedersen*,[12] the court was faced with the question of whether a lien attached to the excess value of homestead property only once the creditor began the execution process. The court held that a lien attaches when the judgment is recorded.[13] In *Federal*

---

[8]RCW 6.13.100.

[9]RCW 6.13.110(3).

[10]RCW 6.13.150, 6.13.160.

[11]*John Hancock Mut. Life Ins. Co. v. Wagner*, 174 Wash. 185, 189, 24 P.2d 420 (1933).

[12]76 Wn. App. 300, 306, 886 P.2d 203 (1994).

[13]RCW 6.13.090 states in pertinent part that "[a] judgment against the owner of a homestead shall become a lien on the value of the homestead property in

*Intermediate Credit Bank v. O/S Sablefish*,[14] the state Supreme Court held that the purchaser of nonhomestead property may assert a homestead exemption to protect the property against execution by the previous owner's judgment creditors. Neither case addresses when net value of homestead property is determined.

RMC focuses on language in *Wilson* and *Sablefish* indicating the courts' concern that debtors might unfairly evade collection on a judgment. But RMC quotes a passage from *Wilson* indicating that the court wanted to avoid a situation where a debtor could destroy a lien regardless of any net value.[15] Here, the question is whether there is any net value. RMC also quotes a passage from a portion of *Sablefish* where the court discussed the question of whether a judgment lien applies to a party who has purchased real property from a judgment debtor.[16] This portion of the *Sablefish* opinion does not address the homestead statutes.

RMC contends that disallowing execution here is unfair and contrary to law. In support of this contention, it quotes *Pratt v. McInroe*:[17]

> We know of no case holding that one, not a judgment debtor, and who takes the property subject to the lien of a judgment or mortgage, can subsequently file a declaration of homestead and defeat such lien.

The *Sablefish* court firmly rejected a similar argument, based on the same quotation.[18] The court there stated that

> Washington cases have held that if a judgment debtor filed

excess of the homestead exemption from the time the judgment creditor records the judgment with the recording officer of the county where the property is located."

[14]111 Wn.2d 219, 758 P.2d 494 (1988).

[15]*Wilson*, 76 Wn. App. at 306 n.5.

[16]111 Wn.2d at 227.

[17]155 Wash. 239, 243, 283 P. 1089 (1930).

[18]111 Wn.2d at 230-31.

a declaration of homestead subsequent to entry of a judgment but before execution, the homesteaded property would be exempt from execution or forced sale. *We perceive no persuasive reason why a purchaser may not buy a debtor's property to use as his or her homestead and similarly defeat a preexisting judgment lien . . . .*[19]

(Footnote omitted and emphasis added.)

RMC also contends that under the rule of "first in time, first in right," its lien has priority over HFC's deed. Priority is irrelevant to the question before us. The issue is whether there is any net value for creditors in the Hyppas' property. No one makes any argument here that whatever lien priority RMC has is in any way affected.

Finally, RMC argues that interpreting RCW 6.13.010(3) to require the existence of net value will render RCW 6.13.090 meaningless. That statute provides in relevant part that

[a] judgment against the owner of a homestead shall become a lien on the value of the homestead property in excess of the homestead exemption from the time the judgment creditor records the judgment with the recording officer of the county where the property is located.

We read apparently conflicting statutes as to reconcile them, if we can do this without distorting the statutory language.[20] The two statutes identified by RMC are clearly reconcilable. RCW 6.13.090 governs the time at which a lien attaches. RCW 6.13.010(3),[21] RCW 6.13.150[22]

---

[19]*Sablefish*, 111 Wn.2d at 230. *See also In re Gitts*, 116 B.R. 174, 178 (1990), *aff'd*, 927 F.2d 1109 (9th Cir. 1991) (*citing Lien v. Hoffman*, 49 Wn.2d 642, 306 P.2d 240 (1957); *Damascus Milk Co. v. Morriss*, 1 Wn. App. 501, 463 P.2d 212 (1969)).

[20]*State ex rel. Royal v. Yakima County Comm'rs*, 123 Wn.2d 451, 459-60, 869 P.2d 56 (1994).

[21]"As used in this chapter, the term "net value" means market value less all liens and encumbrances."

[22]"If, from the report, it appears to the court that the value of the homestead, less liens and encumbrances, exceeds the homestead exemption and the property can be divided without material injury and without violation of any

and RCW 6.13.160[23] require that net value exist before a court may order the property divided or sold. None of the statutes suggest that the fact that a lien attaches at one time guarantees that there will be excess value against which a creditor may execute at a later time. The statutes are not in conflict.

RMC also argues that because HFC and the Hyppas encumbered the subject property with the HFC deed of trust in order to fraudulently avoid the RMC lien, the trial court should have imposed an equitable lien. RMC did not make this argument before the trial court. Therefore, we need not consider it.

The trial court properly appointed an appraiser and correctly determined the value of the Hyppas' homestead in the property. It correctly quashed the writ of execution.

We affirm the trial court's orders.

KENNEDY, A.C.J., and BECKER, J., concur.

governmental restriction, the court may, by an order, direct the appraiser to set off to the owner so much of the land, including the residence, as will amount in net value to the homestead exemption, and the execution may be enforced against the remainder of the land."

[23]"If, from the report, it appears to the court that the appraised value of the homestead property, less liens and encumbrances, exceeds the amount of the homestead exemption and the property is not divided, the court must make an order directing its sale under the execution. The order shall direct that at such sale no bid may be received unless it exceeds the amount of the homestead exemption."